**In re The BEARE COMPANY, Debtor.**

**Bankruptcy No. 93–12462.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Sept. 20, 1994.

Robert A. Udelsohn, Udelsohn, Blaylock & Marlow, Memphis, TN, for debtor.

Lawrence R. Ahern, III, Paul Jennings, Bass, Berry & Sims, Nashville, TN, for First American Nat. Bank.

Jimmy L. Croom, Asst. U.S. Trustee, Office of U.S. Trustee, Memphis, TN.

## MEMORANDUM OPINION RE CONFIRMATION OF DEBTOR'S PLAN

G. HARVEY BOSWELL, Bankruptcy Judge.

The Debtor in Possession, the Beare Company, has proposed a Plan of Reorganization which is before this Court for confirmation. The only creditor objecting to confirmation is First American National Bank ("Bank"), Debtor's largest secured creditor. This memorandum opinion contains findings of fact and conclusions of law. Fed.R.Bankr.P. 7052. By virtue of 28 U.S.C. § 157(b)(2)(L), this is a core proceeding.

The Beare Company is a Tennessee Corporation which is primarily engaged in the operation of cold storage warehouses. The Beare Company currently operates two frozen food warehouses which are located in Jackson and Humboldt, Tennessee. In November of 1985 the Beare Company and First American National Bank entered into what was the first of a series of loan agreements. On September 30, 1988, the Beare Company signed a Consolidated Note, whereby all existing loans from the Bank to the Debtor were consolidated. This loan was in the original principal amount of $5,262,098.47 and was secured by substantially all of Debtor's assets. The consolidated note required repayment in monthly installments, with a "balloon" payment due on or before September 30, 1993. The Beare Company defaulted on the consolidated note on that date, when it was unable to pay the balance due on the loan. The Beare Company filed a voluntary Chapter 11 petition with this Court on November 26, 1993, after the Bank determined that it would not extend the maturity date of the loan. It should be noted that although the Beare Company defaulted on the note, it continued to make regular monthly installment payments which have continued post-petition.

Debtor filed its original plan and disclosure statement on February 25, 1994, and filed its first amended disclosure statement on April 18, 1994. The second amended disclosure statement was filed on May 16, 1994. On May 13, 1994 this Court gave Debtor approval to assume certain executory contracts with American Cold Storage–Jackson, L.P. ("ACS"), the managing agent of the Beare Company. This order was appealed by First American National Bank on August 8, 1994, after its motion to alter or amend the order allowing Debtor to assume the ACS contracts was denied by this Court. On July 15, 1994 this Court determined the appropriate interest rate to be paid by the Debtor in Possession to the Bank upon the effective date of confirmation. On that same date, the Bank objected to the Debtor's proposed plan, and on July 22, 1994, the Debtor filed a modified plan. The confirmation hearing was held on August 16, 1994.

■ All classes, except Class 4, which is comprised solely of First American National Bank, have accepted the Debtor's proposed

plan. The Bank objects to the proposed plan because it does not satisfy the following provisions of the Bankruptcy Code: 11 U.S.C. § 1129(a)(1), § 1129(a)(2), § 1129(a)(3), § 1129(a)(4), § 1129(a)(5)(A)(i), § 1129(a)(8), § 1129(a)(10), and § 1129(a)(11). The Debtor has the ultimate burden of persuading this Court that this plan is capable of confirmation. *See In re Apple Tree Partners*, 131 B.R. 380, 393 (Bankr.W.D.Tenn.1991). The Debtor has met its burden.

The Bank's contention that the plan does not satisfy the requirements for confirmation found in 11 U.S.C. § 1129(a)(1), (2), (3), & (4) is unsubstantiated. After carefully reviewing the proposed plan and considering the numerous facts and circumstances involved in this case, this Court finds and concludes that the requirements found in 11 U.S.C. § 1129(a)(1), (2), (3), and (4) have been satisfied.

Concerning the Bank's objection under § 1129(a)(5)(A)(i), this Court finds that Article XIII (thirteen) of the Second Amended Disclosure Statement contains adequate information to satisfy the requirements under § 1129(a)(5)(A)(i).

■ This Court also disagrees with the Bank's argument that § 1129(a)(10) is not satisfied because Class 5, the class of general unsecured trade claimants, has been artificially impaired, and therefore no non-insider class has truly accepted the plan. Debtor has proposed to pay each creditor within this class seventy percent (70%) of its claim within sixty (60) days of confirmation and thirty percent (30%) of its claim within one-hundred and twenty (120) days of confirmation. The Bank asserts that by delaying payment to these creditors, Debtor has artificially impaired this accepting class of unsecured creditors. In making this argument the Bank relies on *In re U.S. Truck Co., Inc.*, 800 F.2d 581 (6th Cir.1986). However, *U.S. Truck* addresses § 1122 classification, while the issue before the Court in the instant case deals with artificial impairment, not classification. This Court is persuaded that the holding of the Ninth Circuit Bankruptcy Appellate Panel in *In re Hotel Associates of Tucson*, 165 B.R. 470 (9th Cir. BAP 1994) correctly addresses the issue of impairment. In the *Hotel Associates* case, the Bankruptcy Appellate Panel for the Ninth Circuit found that when a Chapter 11 plan provided that payment to a class of unsecured creditors would be delayed for thirty (30) days, the class was impaired and the § 1129(a)(10) requirement could be met even if the Debtor had the ability to pay that class on the effective date of the plan, and even if the reason for delaying payment was to create an artificially impaired class which would vote for the plan. 165 B.R. at 475. In reaching this conclusion, the Bankruptcy Appellate Panel relied on the holding of *In re L & J Anaheim Associates*, 995 F.2d 940 (9th Cir.1993). In *L & J Anaheim Associates* the Ninth Circuit Court of Appeals held that a plan proponent's motivations will not be questioned in determining whether a class is impaired under § 1129(a)(10), but will be examined in deciding whether a plan was proposed in bad faith. 165 B.R. at 475. In other words, good faith under § 1129(a)(3) is the real issue to be decided, not impairment.

■ The Court finds that Class 5, the class of unsecured trade creditors, is clearly impaired because these creditors' rights are not left unaltered by the plan. *See L & J Anaheim Associates*, 995 F.2d at 943. As to the issue of good faith, Tim Belton, Secretary–Treasurer of the Beare Company, testified that the Debtor proposed to delay repayment to these unsecured creditors because some uncertainty exists regarding whether enough cash will be available to pay these creditors immediately following confirmation. At that time the Debtor will need operating cash, and it will have to pay attorneys fees, as well as other administrative expenses. The Court finds that no bad faith has been shown in proposing to pay these creditors as provided in the plan, and therefore, § 1129(a)(10) is satisfied.

■ The Court also disagrees with the Bank's argument that Debtor's plan does not pass the feasibility test of § 1129(a)(11), because the Debtor has not proved its ability to make the balloon payment. Throughout the course of this bankruptcy case, not only has the debtor paid regular monthly installments to the Bank in a timely manner, it has also

made payments on its tax debts, paid all ongoing operating expenses, increased its business, and increased its cash collateral. There is no reason for this court to believe that confirmation of this plan is likely to be followed by liquidation or need for further types of reorganization. Because Debtor's proposed plan presents "a workable scheme of organization and operation from which there may be a reasonable expectation of success," the Court finds that the plan is feasible and therefore satisfies § 1129(a)(11). *See* 5 COLLIER ON BANKRUPTCY, ¶ 1129.02[11] at 1129–59 (15th ed. 1994) (quoting 6A COLLIER ON BANKRUPTCY, ¶ 11.07 at 235 (14th ed. 1975)).

■ The Court finds and concludes that Debtor's plan satisfies all of the provisions of 11 U.S.C. § 1129(a), except for § 1129(a)(8). Therefore in order for Debtor's plan to be confirmed, the Debtor in Possession must proceed under the alternative "cram down" provisions of 11 U.S.C. § 1129(b).

■ The Bank argues that the provisions of 11 U.S.C. § 1129(b) are not satisfied for several reasons. First, the Bank objects to a ten year amortization of its debt with a balloon payment after five years, as proposed in Debtor's plan. However, the Bank originally agreed with the Debtor in Possession to a note with a fifteen year amortization although it was only a five year note. The terms the Debtor is proposing are similar to the terms the Bank bargained for when the consolidated loan was originally made. The Court therefore finds this proposed treatment of the Bank's secured debt to be fair and equitable. In making this finding, the Court has considered the performance of the Debtor in Possession during the ten months it has been operating post-petition. The Debtor in Possession has performed splendidly during this time period.

■ The Bank further argues that § 1129(b)(2)(A) is not satisfied because the Bank will not be receiving the contract rate of interest under the plan. However, this Court previously determined in its "Findings of Fact and Conclusions of Law re Interest Rate Determination," which was filed on July 15, 1994, that § 1129(b)(2)(A) will be satisfied

if the Debtor pays an interest rate of prime plus three (3) percent upon the effective date of confirmation.

■ Finally, the Bank further argues that it is not fair and equitable for the Debtor in Possession to modify the loan agreement, omitting many of the terms that are found in the pre-petition loan documents. The Court finds that the Debtors' proposal to modify the loan agreement is fair and equitable. The Debtor in Possession proposes to leave in place all security documents and debt obligations. The Court finds that the modification of the original loan agreement to eliminate certain covenants and ratios is not unfair under the particular facts of this case and will not significantly limit the Bank's rights under state law. The Court will, however, require the Debtor in Possession to continue to provide the Bank with monthly financial information, as it has been doing on a weekly basis throughout the course of this Chapter 11 case.

Having determined that the Debtor in Possession has complied with all provisions of § 1129(a) except for § 1129(a)(8), and having further determined that the plan as modified is fair and equitable, the Court confirms the modified plan pursuant to U.S.C. § 1129(b).